**PEERLESS ROLL LEAF CO., Inc., v. LANGE et al.**

Circuit Court of Appeals, Third Circuit.
July 6, 1927.

**1. Injunction ☞56—"No Admittance" signs on manufacturing plant not evidence that methods are secret.**

"No Admittance" signs on a manufacturing plant are not evidence that the methods used are secret, and that employees are legally precluded from using the same.

20 F.(2d)—51

**2. Patents ☞328—1,515,676, for covering use of chalk as filler, held invalid.**

Grupe patent, No. 1,515,676, for metallized product covering the use of chalk as a filler, *held* invalid for lack of invention.

**3. Patents ☞328—1,515,722, for covering use of rice starch as filler, held invalid.**

Boyd patent, No. 1,515,722, for transfer metallized medium, covering the use of rice starch as a filler, *held* invalid for lack of invention.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, District Judge.

Suits in equity by the Peerless Roll Leaf Company, Inc., against Richard Lange and Harry H. Hodes, individually and trading as the General Box Top Company, consolidated for trial. Decrees for defendants, and complainant appeals. Affirmed.

W. Clyde Jones, Jos. E. Stricker, and Henry J. Lucke, all of New York City, for appellant.

Darby & Darby, of New York City (Samuel E. Darby, Jr., of New York City, of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The two suits were consolidated for trial. Both were in equity. By one suit the plaintiff sought to restrain the defendants from practicing an alleged secret method of making a certain product and from selling the product made thereunder, as well as to recover profits realized by the defendants and damages sustained by the plaintiff therein. By the other suit the plaintiff charged infringement of two patents later granted for the product which the plaintiff had made by their alleged prior secret method. The trial court in separate decrees dismissed both bills on the grounds, respectively, that the plaintiff's method was not secret within the meaning of the law affording the relief sought and that the patents were invalid. The plaintiff appealed as though from one decree and, having argued the two causes together, we shall dispose of them in one opinion.

[1] We have given full consideration to the issue of the defendant-employees' misuse of their employer's alleged secret method. It will be enough to say that we find no more secrecy in the plaintiff's business than that which normally exists in the average manufacturing business. Practically all are secret in the sense that the public is, for many obvious reasons, excluded from manufacturing

plants. There is nothing legally indicative of secrecy about the familiar "No Admittance" signs. There is testimony for the plaintiff that the defendants were asked to make, and did make, promises to keep the method secret; but the testimony is so sharply controverted that we are constrained to resolve the issue against the plaintiff and hold that the court committed no error in dismissing bill of complaint No. 1.

[2, 3] The plaintiff in the second suit (by bill of complaint No. 2) charged infringement of two patents for metallized products issued to it as assignee of Grupe and Boyd, the inventors. Grupe filed an application for a patent for an invention in the use of chalk or its equivalent as a filler in a product which we shall presently describe, naming rice starch as one of the equivalents of chalk. Later, Grupe, believing the reference in his application to the use of rice starch was a mistake of his patent attorney, caused it to be erased. In the meantime, Boyd had filed an application for a patent covering rice starch as a filler, based on a claimed reduction to practice prior to Grupe's application. Both patents issued to the plaintiff on the same day, No. 1,515,676 as assignee of Grupe and No. 1,515,722 as assignee of Boyd.

The inventions of both patents relate to the very old art of decalcomania which has to do with means for transferring letters, designs, patterns, insignia or the like, from one material, as specially prepared paper, to another material, as china, metals, leather, or fabrics. Three claims of the Grupe patent are in suit. Claim 1 is general and claims 4 and 6 are specific. Claim 1, with accompanying words of explanation, is for:

"A metallic medium comprising a carrier strip (usually made of thin flexible paper), a layer of (heat) releasable composition on one face of said strip (as beeswax), a metallic layer disposed on said layer of releasable composition (as pure gold or silver, or bronze or aluminum to simulate one or the other) and an outermost layer comprising sizing (of shellac or varnish—up to this point everything is old) admixed with a material for increasing the lustre of the metallic layer."

The other two claims differ from the one quoted only in that the specific filling "material" admixed with the outermost sizing layer is chalk.

All claims of the Boyd patent are in suit. They differ from those of the Grupe patent only in the specification of rice starch as a sizing filler.

Obviously if invention is involved in any of the claims of either patent it consists only in the filler used in the last element—the sizing layer.

The plaintiff maintains that the Grupe patent is a primary or basic patent and lies at the foundation of the modern commercial roll leaf industry, claiming that it has five important results which are that chalk or its equivalent, being present in the sizing in the form of myriads of microscopic marbles, (1) operates as a mirror upon light passing through the thin metallic leaf to increase its lustre; (2) affords an opaque screen to block out the color of the article embossed; (3) fills the coarse grain of the fabric embossed; (4) has a heat-retarding effect to produce clean-cut edges of the embossed design; and (5) becomes a shield against tarnishing and discoloring the metallic leaf by chemicals from the article embossed. That the alleged invention was not the foundation of the commercial roll leaf industry is evidenced, we think, by the fact that transfer leaf in rolls was in use, patented and in litigation before the conception of either of the inventions of the patents in suit; and while chalk and rice starch may produce the five results claimed, it is equally true that the same results were obtained in like or different degree by other ingredients in the prior art.

In seeking to cover his invention, Grupe impinged materially upon the art, and so did Boyd. The plaintiff, owning both patents and claiming invention in the use of both chalk and rice starch and their equivalents, finds itself in this difficulty: The defendants did not use chalk as a filler. They admit using rice starch. Unless rice starch is the equivalent of chalk, the defendants, of course, did not infringe the Grupe patent. If rice starch is the equivalent of chalk and Boyd reduced his claimed invention of rice starch to practice before Grupe reduced his claimed invention of chalk to practice, then Boyd anticipated Grupe; otherwise Grupe anticipated Boyd. That chalk and rice starch are equivalents is the theory on which Grupe's application for a patent was first made and, though separate patents for the two things have issued, the whole theory of the plaintiff's brief is that "the proofs herein show beyond question" and the "plaintiff still contends that rice starch is the equivalent of chalk." If chalk and rice starch are equivalents one of the other, they are in the eye of the patent law the same thing and the two patents issued for that thing closely resemble double patenting. In any event where both patents claim the same thing, though under different

names, certainly one is invalid because anticipated by the other. We have not stopped to determine which is invalid by reason of anticipation but have considered the alleged inventions of both—one of chalk with rice starch as an equivalent and the other of rice starch with chalk as an equivalent—in respect to the prior use of ingredients in the art which are so closely related to them as to suggest their equivalency and to indicate their lack of patentability.

· Evidently the Grupe patent or the Boyd patent cannot be infringed unless it is valid and, if valid, it is only because it involves invention and then only if the invention be patentable in that it points out a filler to be admixed with the sizing that is new and useful in the sense of being a real advance over what the art already had. It seems to us that the art had about everything already. It had French chalk dusted on the article to be embossed; dextrin, a derivative of starch; metallic powder; talcum; color pigments; bicarbonate of soda. It had starch variously placed and applied; wheat flour; calcium; pulverized whiting and resin. These fillers varied in some of their functions and perhaps in degrees of excellence in giving lustre and obtaining sharp cleavage. Yet the art is so full of fillers and the idea of fillers has been so long found in the art that we cannot think the disclosure of chalk or rice starch as a filler amounts to invention.

The two decrees of the District Court are affirmed.