Fremont-Smith, J.
These consolidated actions were heard jury-waived on September 19-September 27, 1995. Based upon all of the credible evidence, the Court makes the following findings, rulings and order for judgment.
David Hamburger (David), son of Joseph Hamburger (Joseph) and nephew of Jacob (Ted), began working at Ace Wire and Burlap, Inc. (Ace) and A. Hamburger & Sons (A. Hamburger) summers as a high school student beginning in 1978. His work was primarily that of a warehouseman, loading and unloading trucks, assisting in delivering wire and picking up wool and other manual labor.
In November 1984, after graduating from the University of Bridgeport, David began working at Ace full time. His responsibilities were similar to the work he had done during preceding summers, i.e. general warehouse work for both the wire and wool business. At the time he began full-time employment at Ace, David was aware of a strained relationship between his father, Joe, and uncle, Ted. Nevertheless, both brothers agreed to his employment and welcomed him into the business.
David continued to work, primarily as a warehouseman. Beginning around 1986, however, he began to *410 become involved in the sales activities of Ace. He increasingly began to call on customers and to learn from his father about the pricing and uses for different types of wire. His father also introduced him to customers and suppliers. In subsequent years, David built the business of Ace from about 300 suppliers and $500,000 in sales to over 700 accounts and over $1,000,000 in sales.
Although Ted had originally welcomed David as a general helper and warehouseman, he became increasingly resentful of David’s gradual ascent to the role of sales manager and general manager of the wire business which resulted in a further deterioration of the relationship between Ted and Joseph. Heated and sometimes physical altercations between the brothers ensued, into which David was sometimes drawn on the side of his father. Periodically, Ted attempted to fire David from the business but Joe successfully resisted these efforts. In 1987, Ted went so far as to retain an attorney and brought suit to remove his nephew from the business, but this effort also failed. Things deteriorated to the point where Ted would berate and insult David in front of other employees, and David, on at least one occasion, responded in kind.
In early 1992 David, concerned about his long-term future at Ace, consulted with Ted to inquire about his prospects in the business. Ted rejected David’s request for increased compensation or a commission on sales and told him words to the effect that “in 10 years your father or I will probably die; when that happens you’ll knowwhatyour future is.” David, not unreasonably, understood this to signify that he could expect to be fired if his father died before Ted.
In February or March of 1983, David had a dinner meeting with Robert Yates, Jr. of Eastern Wire Products, Inc. (Eastern Wire), one of Ace’s four suppliers of wire. At this meeting David expressed his unhappiness at Ace and told Yates that he was contemplating going into business for himself. He inquired whether Yates would be willing to help finance a wire company that David would start. Yates subsequently agreed to loan David $50,000 in order to start his new company, $30,000 of which David received and deposited in an account under the name ofhis new company, New England Baling Wire, Inc. (NEBW), in early May 1993. He also leased space for his new company in Avon, Massachusetts.
On May 13, 1993, David resigned without prior notice, formally incorporated NEBW and commenced work the following day at his new quarters in Avon, Massachusetts. He also immediately hired Ace’s bookkeeper, Ray Brennan, who had resigned a week earlier, and Ace’s truck driver was employed on May 20, 1993. Beginning on May 13, David and Brennan began to actively solicit, by telephone, many of Ace’s customers, with the result that several hundred of them are now customers of David’s NEBW.
Ted contends that David’s arrangement for financing and leasehold arrangements for NEBW and his solicitation of Ace’s customers were wrongful because they not only had commenced while he was still an Ace employee, but because the customer solicitation was facilitated by David’s wrongful appropriation of confidential customer lists and pricing information of Ace, which David is alleged to have obtained with Joseph’s connivance, in violation of David’s and Joseph’s fiduciary obligations to Ace and to Ted. See Chelsea Industries, Inc. v. Gaffney, 389 Mass. 1 (1983); Cardullo v. Landau, 329 Mass. 5, 8 (1952).
The Court rules, however, that David’s having arranged financing and leased space for NEBW while he was still an Ace employee was not illegal, as an employee is free to make such logistical arrangements while still an employee. See Chelsea Industries, supra, at 10; Meehan v. Shaughnessey; Cohen, 404 Mass. 419, 435 (1989).
With respect to David’s solicitation of Ace customers, there was no evidence that this had commenced, in any significant way, prior to his May 13, 1993 resignation. As Ace’s sales manager, he had been intimately familiar with its customers and pricing, so that he was familiar with such information when he left Ace’s employ. He was entitled to use his general knowledge, experience, memory and skill in establishing NEBW, including “remembered information.” J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 357 Mass. 728, 740 (1970). Although he was certainly a key employee, an employer who wishes to restrict the post-employment competitive activities of a key employee, where the activities do not entail misuse of proprietary information, must protect that goal through a noncompetition agreement. Augat, Inc. v. Aegis, Inc., 409 Mass. 165, 172 (1991). This the plaintiff neglected to do. Moreover, while David may have made some use of personal notes relating to Ace customers, customer lists are not considered trade secrets if the information is readily available from published sources, such as business directories. Such directories were in fact available to him and were used by him and Brennan to contact customers on and after May 13. While Ted suspected that Joseph was providing David with such information from Ace, there was no hard evidence of this such as would convince the Court that this occurred to any significant extent. And, while Ted and Joseph were certainly at logger-heads with respect to customer pricing after David left, the Court concludes that Joseph’s contradiction of Ted’s quoted prices to customers resulted from their convergent views as to what was best for the company, rather than from any attempt by Joseph to sabotage the wire business for the benefit of his son.[1]
By the same token, the Court is not convinced that Ted, on his part, acted in bad faith in his conduct of the business or in filing this lawsuit. Ted’s views were so colored by his animosity for his brother and nephew that Ted suspected the worst of them and reacted accordingly in bringing the lawsuit.
*411 The sad and ironic thing about this case is that this festering hatred between two brothers caused the ruination of a good family business, by driving away the very person who had built the business up since 1984 and who was the only person around who had the energy, personality, knowledge and love for the business that could have preserved it for the long run. Under the circumstances in which he found himself, David took the only reasonable course open to him and did so in a way which the court finds did not violate any legal obligation to Ted or Ace.
ORDER FOR JUDGMENT
It is ordered that, in Civil Action Number 93-3359-E, and in 94-2130-A, final judgment shall enter for all defendants, in each case, and, with respect to the counterclaims, final judgment shall enter for the defendants-in-counterclaim in each case.

Ted testified that he believed Ace should meet the lower price competition of NEBW even if this meant selling wire at below fully-accounted cost, whereas Joseph testified that he believed that sales should only be made at prices which could return a net profit to the company.