Lowy, David A., J.
The plaintiff, ArchiText, Inc. (“ArchiText”), brings this action against the defendants, two of its former employees, Rosella Margaroli Kikuchi (“Margaroli”), and Masako Robertson (“Robertson”), alleging misappropriation of trade secrets. Now before the Court is ArchiText’s motion for preliminary injunction and attachments. For the reasons set forth below, these motions are DENIED.

BACKGROUND

ArchiText is a corporation, which, among other services, provides translations of technical material into different languages. The defendants are both former employees of ArchiText. Margaroli was a production manager and Robertson was a project manager. Both signed “Confidentiality and Proprietary Information Agreements.” Neither signed non-competition or non-solicitations agreements. Both now work for MatrixOne, a software company that was ArchiText’s largest customer.
The key to this dispute is the Translation Memories (“TMs”) that ArchiText compiled of its work performed on behalf of MatrixOne. A TM is a database of frequently translated technical phrases that ArchiText compiles into a database in order to speed up the translation process. When a translator is translating MatrixOne’s software into a different language, she utilizes a “TM tool,” a commercially available product, to access, compile and use the TM database. ArchiText contends that a TM is not the workproduct of the customer for which ArchiText compiles the TM, but rather a “byproduct of producing the workproduct” for the client, that remains ArchiText’s proprietary information. MatrixOne contends that the TM is MatrixOne’s workproduct and not Architext’s trade secret or proprietary information.
An additional factor to this dispute is the independent contractors that ArchiText uses to perform the translation services. ArchiText argues that the identity of these contractors and the rate at which ArchiText paid them is confidential business information subject to protection.
Margaroli resigned from ArchiText in September 2004 and according to ArchiText sent TMs and information concerning the independent contractor translators to MatrixOne before her final day of work on September 30, 2004. Around this time, MatrixOne informed ArchiText that it would receive no further business from them. ArchiText further alleges that after Margaroli left, Robertson sent more TMs to MatrixOne. Robertson then resigned from ArchiText on November 19, 2004.
ArchiText contends that once Margaroli and Robertson provided MatrixOne with the TMs and the identities of the independent contractors, MatrixOne began performing the translations, previously done by ArchiText, in-house.
ArchiText’s complaint consists of five counts: (1) breach of contract by Margaroli; (2) breach of contract by Robertson; (3) misappropriation of trade secrets by both defendants; (4) breach of duty of loyally by Margaroli; and (5) violations of c. 93A by Margaroli. ArchiText is seeking a preliminary injunction to (1) prevent defendants from working at MatrixOne; (2) prevent the defendants from using, on behalf of MatrixOne, the independent contractor translators used by ArchiText; (3) require the defendants to return the TMs; and (4) prevent the disclosure or use of any of ArchiText’s trade secrets or confidential business information, including TMs and the information relating to the identity and/or rates of the independent contractor translators.

DISCUSSION

This Court need not analyze the merits of the underlying claims to determine that it cannot grant much of the relief sought by ArchiText. MatrixOne is not a party to this case. As such, the Court cannot enj oin or restrain it from using the TMs or independent contractors, nor can the court order MatrixOne to return the TMs to ArchiText. However, the Court will determine if a preliminary injunction of some form is warranted regarding the defendants, Margaroli and Robertson.
To obtain a preliminary injunction the plaintiff must show a likelihood of success on the merits on the underlying claims and a substantial risk of irreparable harm. Packaging Industries Group v. Cheney, 380 Mass. 609, 616-17 (1980). Once the plaintiff makes these initial showings, the court must balance them against the harm the injunction would inflict on the opposing parly and the impact on public interest. Id.
The central issues in this case are ArchiText’s contentions that the TMs ArchiText compiled in the course of performing its translation services for MatrixOne, and the identity of the independent contractors who performed the translations are protect-able trade secrets or proprietary information. As such, ArchiText must establish that there is a likelihood that it will succeed in establishing this.
A. Trade Secrets
A trade secret is “any formula, pattern, device, or compilation of information which is used in one’s business, and which gives [one] an opportunity to obtain an advantage over competitors who do not know or use it.” J.T. Healy & Sons, Inc., v. James A. Murphy & Sons, Inc., 357 Mass. 728, 736. There are six factors to determine whether certain information is a protectable trade secret: (1) the extent to which the information is known outside the employer’s business; (2) the extent to which the information is known by employees and others involved in the employer’s business; (3) the measures taken by the employer to *129 guard the secrecy of the information; (4) the value of the information to the employer and its competitors; (5) the effort and money spent developing the information; and (6) the ease or difficulty with which others could properly acquire or duplicate information. Jet Spray Coolers, Inc. v. Crampton, 361 Mass. 835, 840 (1972).

129

ArchiText compiled the TMs in the course of performing translation services for MatrixOne. ArchiText contends that this “byproduct” of the workproduct it produced for MatrixOne is a protectable trade secret. MatrixOne alleges that the TMs are “workproduct” produced for MatrixOne and thus properly belongs to MatrixOne. The contract between ArchiText and MatrixOne clearly states that all “workproduct” belongs to MatrixOne. At first blush, the TMs do appear to fall under the definition of trade secret in that they are a compilation of information used in ArchiText’s business. However, not only is MatrixOne not a competitor of ArchiText, but the compilation was compiled for the translations performed for MatrixOne. ArchiText has demonstrated that the TMs are not widely known outside the world of technical and software translation; that ArchiText has spent significant time and money developing the TMs; that the TMs are valuable; and that it would take a lot of time and resources to recompile all the translations contained in the TMs. However, MatrixOne has a strong argument that according to the contract, the TMs are “workproduct” and thus properly belong to them. If this is so, it would be impossible for ArchiText to establish a claim that Margaroli and Robertson misappropriated information that was not ArchiText’s proprietary information. This Court finds that there is insufficient likelihood that ArchiText will succeed on the claim to support a preliminary injunction.
B. Independent Contractors
ArchiText used a small number of independent contractors who worked out of their homes using the TMs to translate for ArchiText’s clients. ArchiText contends that the identities and rate of pay of these independent contractors are proprietary information that the defendants may not share with MatrixOne.
ArchiText did not have exclusive contracts with the independent contractors. Their identities are known to anyone who uses their services. They would certainly be allowed to advertise their abilities to translate software and technical information. ArchiText did not “develop” these translators. ArchiText simply determined who were the best and negotiated fees with them, just as any other corporation and independent contractor would do when entering into a service agreement.
Even assuming that the identity of the independent contractors are proprietary business information, both Margaroli and her husband worked as independent contractor translators. They know both the identities of the translators and the rates at which they are paid. This information was not known exclusively by ArchiText. As such, this Court finds that ArchiText has not shown that it has a likelihood of success of proving that the identity and rate of pay of the independent contractor translators are proprietary or confidential information sufficient to warrant a preliminary injunction.[2]
C. Doctrine of Inevitable Disclosure
Even assuming the independent contractors and the TMs are protectable trade secrets or proprietary information, as discussed above, this Court cannot enjoin MatrixOne from using the independent contractors, nor require it to return the TMs. Thus the only potential relief would be preventing Margaroli and Robertson from working at MatrixOne and preventing them from disclosing trade secrets.
As there is not a non-competition agreement which restrains either Margaroli or Robertson, this Court would need to rely on the doctrine of “inevitable disclosure” to enjoin the defendants from working at MatrixOne. Although not yet adopted by the Massachusetts Courts, this doctrine, used in other jurisdictions, allows the court to enjoin a former employee from working at a competitor of the employer, even if the former employee never entered into a non-competition agreement, if the court finds that such employment would inevitably lead to a disclosure of the trade secret. Even if it were appropriate for this Court to rely on the doctrine of “inevitable disclosure,” this situation is not one that would warrant application of the doctrine. MatrixOne is not a direct competitor, and there is not a significant likelihood that Margaroli and Robertson possess any trade secrets that would inevitably be disclosed through their employment at MatrixOne. For this same reason, this Court will also not issue an injunction preventing the disclosure of any trade secret or proprietary information.[3]

ORDER

For the foregoing reasons, it is hereby ORDERED that ArchiText’s motions for preliminary injunction and attachments are DENIED.

 This Court need not address the likelihood of success on the claims for breach of contract, breach of duty of loyalty, or violations of c. 93A. To the extent that the claims rely on allegations related to the misappropriation of trade secrets, this Court has already found insufficient likelihood of success. To the extent that these claims rely on other allegations, they would not support the relief sought in this preliminary injunction.

 This Court also denies the motion for attachment for the same reasons: an insufficient likelihood of success on the merits.