Uber Technologies, Inc., retained Zemcar Inc.—which was doing business as Grip Mobility Co. (“Grip”)— to develop a smart-phone-based app that would make audiovisual recordings of Uber rides, to protect both passengers and drivers. Grip contends that its app was a great success during a Brazilian pilot program; Uber asserts that the app had “significant issues and limitations.” Uber and Grip also discussed the possibility of incorporating Grip’s audiovisual-capture solution in software for unaccompanied minors using rideshares. After terminating its relationship with Grip, Uber released an audiovisual recording feature within its own app that it calls “Record My Ride” and similar functionality within a feature that it calls “Uber for Teens.”
Grip claims that Uber misappropriated trade secrets that belong to Grip in violation of the Massachusetts Uniform Trade Secrets Act, G.L. c. 93, §§ 42–42G (“MUTSA”). Five months ago, Judge Squires-Lee ruled that Grip was not entitled to begin discovery on its trade secret claims because Grip had failed to identify its alleged trade secrets with the “reasonable particularity” required by G.L. c. 93, § 42D(b).
Since then, Grip has provided Uber with several iterations of a revised trade secret list. The latest version is almost 100 pages long. Grip contends that this list contains a wealth of detail about its alleged trade secrets and that it should therefore be permitted to obtain trade secret discovery. Uber disagrees; it contends that, despite its length and its reference to various technical details, this revised disclosure still does not specify what Grip asserts is a trade secret.
The Court agrees with Uber. It will therefore deny Grip’s motion to compel trade secret discovery and allow Uber’s motion to continue the stay of trade secret discovery. The Court will also set a deadline in about five weeks for Grip, at long last, to provide a trade secret list that actually complies with § 42D(b).
 
                                                            -1-
 
If Grip once again fails to do so, Uber may be entitled to seek dismissal of the trade secrets claims for lack of prosecution or seek summary judgment on the ground that Grip is unable to establish an essential element of its trade secret claims.
1. Legal Background. A plaintiff asserting a claim for misappropriation of trade secrets under MUTSA “must state with reasonable particularity the circumstances thereof, including the nature of the trade secrets and the basis for their protection.” G.L. c. 93, § 42D(b). The plaintiff may not commence discovery “relating to an alleged trade secret” until after it identifies the trade secret “with sufficient particularity under the circumstances of the case to allow the court to determine the appropriate parameters of discovery and to enable reasonably other parties to prepare their defense.” Id.
MUTSA’s trade secret disclosure requirement follows from the underlying substantive law.
To state a claim for misappropriation of trade secrets, whether at common law or under MUTSA, a plaintiff must allege facts plausibly suggesting that: “1) the information is a trade secret; 2) the plaintiff took reasonable steps to preserve the secrecy of the information; and 3) the defendant used improper means, in breach of a confidential relationship, to acquire and use the trade secret.” See Protégé Software Servs., Inc. v. Colameta, Middlesex civ. action 09-03168, 2012 WL 3030268, at *11 (Mass. Super. July 16, 2012) (Kirpalani, J.) (common law trade secret claim), quoting Incase Inc. v. Timex Corp., 488 F.3d 46, 52 (1st Cir. 2007) (applying Massachusetts law); Neural  Magic,  Inc.  v.  Meta  Platforms,  Inc.,  659 F.Supp.3d 138, 158 (D.Mass. 2023) (Casper, J.) (MUTSA claim); accord J. T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 357 Mass. 728, 736–738 (1970); Peggy Lawton Kitchens, Inc. v. Hogan, 18 Mass. App. Ct. 937, 939 (1984) (rescript).
Furthermore, “[t]he subject matter of a trade secret must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret.” J. T. Healy & Son, Inc., 357 Mass. at 736,[1]
 
--------------------------------------------
 
[1] Though the decision in J. T. Healy predates MUTSA and addresses a common law claim for trade secret misappropriation, it applies with full force here. Claims for misappropriate of trade secrets under Massachusetts common law and under MUTSA are “essentially equivalent” because MUTSA “essentially codifies the common law.” See Incase Inc. v. Timex Corp., 488 F.3d 46, 52 n.10 (1st Cir. 2007) (“essentially equivalent”); Burten v. Milton Bradley Co., 763 F.2d 461, 462 (1st Cir. 1985) (“essentially codifies the common law”).
 
                                                            -2-
 
quoting Restatement of Torts, § 757, comment b; accord The Gillette Co. v. Provost, 91 Mass. App. Ct. 133, 138–139 (2017) (use of concepts that are in the public domain, and known to those skilled in the art of a particular discipline, provides no factual support for misappropriation of trade secret claims); Energy Resources Corp., Inc. v. Porter, 14 Mass. App. Ct. 296, 302 (1982) (former employee was free to use technology and concepts that were common knowledge in relevant professional and scientific community, and discussed in technical literature); Dynamics Research Corp. v. Analytic Sciences Corp., 9 Mass. App. Ct. 254, 267 (1980) (concepts that would be obvious to an inertial guidance engineer were not protectable as trade secrets).
Since obvious concepts cannot be trade secrets, “[t]he obvious combination of publicly known features are not protectable trade secrets” either. Covidien LP v. Esch, 378 F. Supp. 3d 119, 126 (D. Mass. 2019) (Gorton, J.), citing Gillette Co. v. Provost, Suffolk Sup. Ct. no. 1584CV00149-BLS2, 2017 WL 2292748, at *3 (Mass. Super. Apr. 19, 2017) (Salinger, J.); accord Strategic Directions Grp., Inc. v. Bristol-Myers Squibb Co., 293 F.3d 1062, 1065 (8th Cir. 2002) (obvious combination of known elements not a trade secret); Julie Research Labs., Inc. v. Select Photographic Eng'g, Inc., 998 F.2d 65, 67 (2d Cir. 1993) (particular combination of design choices not trade secret if “obvious, widely known, easy for others to discover legitimately, or disclosed” publicly).
MUTSA incorporates these common law understandings of what constitutes a protectible trade secret. The statute defines “trade secret” to mean any “specified or specifiable information” that provides actual or potential economic advantage “from not being generally known to, and not being readily ascertainable by proper means by,” others who might want to exploit it. G.L. c. 93, § 42, ¶ (4).
That is why, as Judge Squires-Lee explained, § 42D(b) requires that a trade secret disclosure “must be particular enough as to separate [each claimed] trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade.” See Decision and Order dated Oct. 20, 2025, docket no. 73, at 3, quoting Dow Chemical Canada Inc. v. HRD Corp., 909 F.Supp.2d 340, 346 (D. Del. 2012); accord, e.g., Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc., 53 F.4th 368, 381 (6th Cir. 2022) (applying Kentucky Uniform Trade Secrets Act); WeRide Corp. v. Kun Huang, 379 F.Supp.3d 834, 846 (N.D. Cal. 2019) (applying California Uniform Trade Secrets Act).
                                                            -3-
 
In other words, the trade secret list must identify each claimed trade secret “with sufficient particularity so that the reader can understand how each claim differs from information in the public domain.” Decision and Order dated Oct. 20, 2025, supra, quoting Alnylam Pharms., Inc. v. Dicerna Pharms., Inc.,    no. MICV20154126, 2016 WL 4063565, at *3 (Mass. Super. Apr. 6, 2016) (Leibensperger, J.).
2. Analysis. Judge Squires-Lee ruled that Grip’s prior trade secret disclosure was inadequate for two reasons.
First, the prior disclosure lacked meaningful detail. Judge Squires-Lee noted that the prior trade secret list “mainly describes the functionality of the two Grip apps at issue” without identifying what code, technical specifications, engineering techniques, or other proprietary information constituted the claimed trade secrets. Grip’s disclosure was therefore deficient because Grip had “not clearly identified and disclosed the underlying technical aspects of those apps, or any other features, that constitute its trade secrets.”
Second, the prior disclosure was too vague and lacked specificity, meaning that there was no way to tell from the disclosure what Grip claimed was a trade secret. Judge Squires-Lee explained that “Grip must identify what specific aspects of its confidential applications it alleges constitute its trade secrets.” She added that, “Grip must provide a trade secret list with sufficient information that all parties and the Court are able to discern with specificity what the trade secrets at issue are and to bind Grip in connection with its claim.”
In response, Grip has greatly expanded its trade secret disclosure to include what it characterizes as a “meticulous level of detail” regarding its claims that Uber misappropriated trade secrets associated with Grip’s Sentinel and Zemcar apps.
But Grip failed to cure the second problem identified by Judge Squires-Lee. Its revised disclosure still fails to identify with reasonable particularity what aspects of those apps or other information that Grip provided to Uber constitute trade secrets rather than information that is publicly available.
The Court cannot tell whether Grip claims that everything mentioned or alluded to in its roughly 100-page disclosure is a trade secret, or just some things. For example, the disclosure refers to fairly generic concepts like capturing video from a smartphone’s front-facing camera, capturing audio from a smartphone’s microphone, monitoring a device’s battery percentage,
 
                                                            -4-
 
and monitoring a device’s GPS location. The disclosure seems to assert that these general concepts are trade secrets. And during oral argument Grip said that every single thing mentioned anywhere in the disclosure is claimed to be a trade secret. But it then conceded, in response to more specific questions by the Court, that at least some of these very general concepts are not trade secrets.
That is a problem. “When the breadth of a trade secret description is so far- reaching that it includes publicly available information … and admitted industry knowledge, that information is not specific enough to be accorded trade secret status.” Mallet & Co. Inc. v. Lacayo, 16 F.4th 364, 384 (3d Cir. 2021) (applying Federal Defense of Trade Secrets Act and Pennsylvania Uniform Trade Secrets Act).
In addition, Grip’s disclosure now includes, under the heading “Trade Secrets,” a table listing about 180 alleged trade secrets, each of which Grip describe as involving “knowhow, algorithms, and techniques” regarding some general topic, with a cross-reference to another section of the disclosure. Grip argues, in the memorandum in support of its motion to compel trade secret discovery, that Uber was able to accelerate the development of its own apps because it had “access to Grip’s knowhow, algorithms, and techniques.”
The vague phrase “knowhow, algorithms, and techniques” could include anything. It does not tell Uber or the court what is included in or excluded from the claimed trade secrets.
The revised disclosure indicates that Grip is claiming that everything listed in this table is a trade secret. In its written opposition to Uber’s motion, Grip said that its “trade secret table is a condensed identification of each discrete trade secret listed in its disclosure.” At oral argument, however, Grip seemed to back away from this position, asserting that Grip does not contend that the entries in the table are themselves describing trade secrets.
The Court does not know what to make of such a muddle, when Grip itself cannot keep straight whether it is or is not claiming that the vague and amorphous descriptions in its trade secret table are things that Grip claims constitute trade secrets that were misappropriated by Uber.
Though each entry in the trade secret table refers to specific pages that follow in the disclosure, the information provided in those pages provides little clarity as to what Grip claim is a trade secret. With respect to the Sentinel and Zemcar apps, each of the following sections in the disclosure contains an introductory
 
                                                            -5-
 
narrative that is very general. That is followed in each section with a table made up of columns labelled “Feature/Subsystem,” “Description,” “Behavior,” and “Technical Details.” The entries under the first two columns consist of just a short phrase or two, and the entry under the “Description” column is very generic and could cover an incredibly wide range of things. Most of the sections then reference specific files that contain the relevant source code from each app.
The Court is at a loss in trying to discern what Grip claims are its trade secrets. Is everything in its disclosure claimed to be a trade secret, as Grip seems to contend? If so, the disclosure fails to provide “reasonable particularity,” as required by G.L. c. 93, § 42D, because the introductory narratives and the information provided in the “Feature/Subsystem,” “Description,” and “Behavior” columns are too vague to put Uber and the court on notice as to what those parts of the disclosure encompass. On the other hand, if some of these aspects of the disclosure are not things that Grip claims to be trade secrets, then the disclosure is inadequate because there is no way to distinguish any claimed trade secrets from mere context.
Though Grip’s trade secrets disclosure describes at great length “the methods and processes underlying and the inter-relationships among various features” in the Grip’s Sentinel and Zemcar apps, it is not specific enough to satisfy the MUTSA disclosure requirement because “it does not separate the [claimed] trade secrets from other information that goes into any software package” with similar functionality. IDX Sys. Corp. v. Epic Sys. Corp., 285 F.3d 581, 583–584 (7th Cir. 2002) (applying Wisconsin Uniform Trade Secrets Act, and affirming summary judgment for defendant).
“ ’Long lists of general areas of information containing unidentified trade secrets,’ ‘catchall phrases,’ ” and broad “ ’categories of trade secrets’ that the plaintiff intends to pursue at trial fail to identify the trade secret with sufficient particularity.” Double Eagle Alloys, Inc. v. Hooper, 134 F.4th 1078, 1089 (10th Cir. 2025) (applying Oklahoma Uniform Trade Secrets Act), quoting InteliClear, LLC v. ETC Global Holdings, Inc., 978 F.3d 653, 658 (9th Cir. 2020) (applying Federal Defense of Trade Secrets Act).
“Rather than a ‘reasonably particular’ list of trade secrets, Plaintiff's disclosure resembles an effort to categorize every piece of information or know-how that could potentially have value to the company,” whether it is secret or not.  Loop AI Labs Inc. v. Gatti, 195 F.Supp.3d 1107, 1114 (N.D. Cal. 2016) (applying California Uniform Trade Secrets Act). That is not sufficient under § 42D.
 
                                                            -6-
 
“If a plaintiff ‘effectively assert[s] that all information in or about its [product] is a trade secret,’ then it brings a case ‘both too vague and too inclusive,’ and does not allow a jury”—or permit the defendant or the court—”to ‘separate the trade secrets from the other information that goes into any’ product in the field.” Caudil Seed, 53 F.4th at 381, quoting IDX Sys. Corp. v. Epic Sys. Corp., 285 F.3d 581, 583–584 (7th Cir. 2002) (applying the Wisconsin Uniform Trade Secrets Act, and affirming summary judgment for defendant). Yet that seems to be exactly what Grip is trying to do in its revised trade secret disclosure.
“In cases involving a combination trade secret based on technical information,” like this case, “the reasonable-particularity requirement takes on special importance. A combination-trade-secret plaintiff must ‘describe the secret with sufficient specificity that its protectability can be assessed and to show that its compilation is unique.’ ” Caudil Seed, 53 F.4th at 381, quoting SitUp Ltd. v. IAC/InterActive Corp., no. 05 Civ. 9292(DLC), 2008 WL 463884, at *10 (S.D.N.Y. Feb. 20, 2008). “[A] plaintiff asserting a combination trade secret over highly complex technical information cannot merely offer lists of broad technical concepts identifying categories of information without showing which information contained within those categories constituted a trade secret.” Card Isle Corp. v. Farid, 689 F.Supp.3d 1273, 1289 (N.D. Ga. 2023), quoting Caudil Seed, 53 F.4th at 381. Once again, that is an apt description of Grip’s disclosure.
Grip’s practice of cross-referencing different sections of its disclosure also create impenetrable ambiguity. For example, at pages 75 to 76, Grip identifies as trade secrets particular “code snippets” that it says it provided to Uber. So far so good. Uber agreed at oral argument that, standing alone, this part of the disclosure would provide a reasonably particular identification of these alleged trade secrets. But then, on page 76, Grip claims that the “code snippets” trade secrets also encompass everything else mentioned anywhere in sections 1(a) and 2© of its disclosure. Those sections combined are about 12-pages long and suffer from the same lack of specificity discussed above. So one cannot tell after all what is and is not included in the claimed “code snippets” trade secret.
Trade secret number 8, concerning unspecified “Methods and Techniques,” is as unclear as the trade secret table itself. This section of the disclosure does not identify any actual “method” or “technique” that Grip allegedly shared with Uber. Instead, it asserts that Grip provided Uber with techniques for accomplishing incredibly generic functions like “app-to-app integration.” This section then asserts that “[t]he functionality in these methods and techniques
 
                                                            -7-
can be found in” other specified sections of the disclosure. But presumably Grip intends that its description of trade secret number 8 adds something; otherwise it would be redundant. Neither the court nor Uber can tell what trade secret number 8 adds to the rest of the document.
The Court has not attempted to identify and catalogue every single way in which Grip’s trade secret disclosure is inadequate. The examples discussed above are more than sufficient to make the point.
Grip’s repeated assertion that it should not be required to identify its claimed trade secrets with reasonable particularity as required by § 42D, because Uber knows exactly what it obtained from Grip, is without merit. If it were enough to say “the defendants knows what it took,” then no § 42D disclosure would ever been required. The Court must enforce the statute as written. Uber is not required to guess which ideas, suggestions, or other information shared by Grip are now claimed to be trade secrets and which are not.
During oral argument, Grip also asserted that the work of figuring out what parts of its latest trade secret disclosure describe publicly available information and what parts actually identify trade secrets should be done through the discovery process. Not so.
As Judge Squires-Lee explained, the identification of allegedly stolen trade secrets with the reasonable particularity required by § 42D “must come before a plaintiff is allowed to obtain discovery of a defendant’s confidential information regarding the development of the defendant's own technology so as to prevent a plaintiff, especially a competitor as in this case, from rummaging through a defendant’s scientific files” (emphasis in original). Decision and Order dated Oct. 20, 2025, quoting Alnylam Pharms., 2016 WL 4063565, at *2.
MUTSA says so expressly. Grip must provide the required disclosure of what it claims are the misappropriated trade secrets “before commencing discovery relating to an alleged trade secret” (emphasis added). G.L. c. 93, § 42D(b).
“One of the touchstone goals” of requiring pre-discovery specification of alleged trade secrets “is to prevent plaintiffs from engaging in a ‘shifting sands’ strategy wherein they ‘allege secrets vaguely, discover what is in the defendant's possession, and claim it was a trade secret all along.’ ” Alphonso Inc. v. Tremor Video, Inc., no. 22-CV-03629-NC, 2022 WL 17968081, at *3 (N.D. Cal. Oct. 31, 2022) (staying defendant’s obligation to response to trade secret discovery pending more detailed trade secret disclosure), quoting Wisk Aero
 
                                                            -8-
 
LLC v. Archer Aviation Inc., no. 21-cv-02450-WHO, 2021 WL 8820180, at *9 (N.D. Cal. Aug. 24, 2021). “Experience has shown that it is all too easy for a plaintiff to allege trade secrets with calculated vagueness, then use discovery to redefine the trade secrets to be whatever is found in defendant’s files.” Quintara Biosciences, Inc. v. Ruifeng Biztech Inc., no. C 20-04808, 2021 WL 2166880, at *1 (N.D. Cal. May 27, 2021). The statutory requirement that a plaintiff disclose its trade secrets with reasonable particularity beforeing obtain discovery about any of the defendant’s trade secrets is aimed at solving this problem. Id.[2]
Since Grip has still failed to comply with the disclosure requirement imposed by statute, it is still not entitled to compel Uber to provide trade secret discovery.
ORDER
Plaintiff Grip Mobility Co.’s motion to compel trade secret discovery (docket no. 78) is denied. Defendant Uber Technologies’ motion to continue the protective order staying trade secret discovery (docket no. 85) is allowed. Grip shall provide a revised trade secret list that satisfies the requirements of G.L. c. 93, § 42D(b), no later than April 29, 2026.
/s/Kenneth W. Salinger Justice of the Superior Court
March 20, 2026
 
--------------------------------------------
 
[2] For much the same reason, federal district courts that handle a substantial volume of patent infringement cases often adopt local rules or standing orders that require early identification of patent infringement contentions, through a claim chart or similar mechanism, in order to “prevent the ‘shifting sands’ approach to [patent] claim construction.” Facebook, Inc. v. Windy City Innovations, LLC, 973 F.3d 1321, 1338 n.8 (Fed. Cir. 2020), quoting O2 Micro Int’l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1364 (Fed. Cir. 2006).