**DELTA EDUCATION, INC.**

v.

**Stephen M. LANGLOIS, et al.**

No. C–89–088–L.

United States District Court,
D. New Hampshire.

Aug. 8, 1989.

Phillips, Gerstein & Holber by Robyn Frye Honig, Stuart M. Holber, Haverhill, Mass., for plaintiff.

Gray, Wendell & Clark by Grenville Clark, III, Manchester, N.H., Neuman & Cobb by Clifford L. Neuman, Boulder, Colo., for defendants.

## ORDER ON MOTIONS

LOUGHLIN, Senior District Judge.

This is an action in which the plaintiff, Delta Education, Inc., alleges that John P. (Jack) Langlois (who is deceased and is represented in this action by Stephen M. Langlois), Barbara Macek and William Chaisson (collectively the "individual defendants"), while employed by the plaintiff, violated duties of care and loyalty owed to the plaintiff, committed various commercial torts against the plaintiff, and injured the plaintiff through acts of mail fraud in violation of 18 U.S.C. § 1341, and through a violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961–1968. The plaintiff further alleges that the three corporate defendants—Scott Resources, Inc., Scott Capital

Resources, Inc., and Summit Learning, Inc. —with the assistance of the individual defendants, committed various commercial torts against the plaintiff, and injured the plaintiff through acts of mail fraud and through RICO violations. Jurisdiction is premised on diversity of citizenship, 28 U.S.C. § 1332, and federal question jurisdiction, 28 U.S.C. § 1331. The corporate defendants moved to dismiss the complaint for lack of personal jurisdiction and improper venue, moved to dismiss the mail fraud claims for failure to state a claim upon which relief can be granted, and moved for a more definite statement. Defendant Macek has joined in the motion to dismiss the mail fraud claim, and moves for sanctions pursuant to Rule 11. All the defendants have moved to strike two affidavits submitted by the plaintiffs.

The facts as alleged in the complaint and documents submitted by the plaintiff are as follows. The plaintiff is a New Hampshire corporation whose president has been Thomas Richardson since December, 1987. The plaintiff sells educational materials to schools throughout the United States. Most of its business results from its kits and catalog sales.

Jack Langlois ("Langlois") was the plaintiff's Vice President of Marketing and Sales in 1987. In January, 1988, Langlois entered into a two year employment contract with the plaintiff, as Vice President and as a Director. Langlois convinced the plaintiff to hire defendant Macek as manager of the plaintiff's catalog and non-school sales, in January, 1988. Defendant Chaisson was a buyer in the plaintiff's purchasing department at this time.

In March, 1988, Langlois showed a copy of a business plan to Kenneth Luoni, in order to demonstrate to Luoni that catalog sales could be highly profitable. Luoni had been Operations Vice President of the plaintiff since February, 1988. The business plan Langlois gave to Luoni was dated November 20, 1987, and detailed the formation and operation of Scott Distribution, Inc. The plan was developed by Langlois and referred to Langlois, Macek and Chaisson as "Key Management" of Scott Distribution. It included confidential information and trade secrets of the plaintiff, which were divulged by Langlois and Chaisson. Luoni made a copy of the plan and returned the original to Langlois.

In 1988, the three individual defendants, while employed by the plaintiff, secretly were working for defendants Scott Resources and Scott Capital. Macek divulged to third parties knowledge of the plaintiff's finances, records, marketing, advertising, cataloging, pricing, and distribution strategies, trade secrets, and other confidential information. Together, the defendants misappropriated and converted confidential and proprietary information of the plaintiff for the benefit of the defendants. Scott Resources and Scott Capital compete with the plaintiff for sales of educational materials, and have the same registered agent, the same office, and the same principal place of business. Scott Distribution, the subject of the business plan, was formed as defendant Summit Learning by Scott Resources and Scott Capital to compete directly with the plaintiff.

In May, 1988, Macek resigned from the plaintiff and began open employment with Summit Learning. Luoni did not believe the proffered explanation for Macek's resignation and he became suspicious of Langlois' behavior in June and July, 1988, which he considered to be totally out of character for Langlois. In early July, 1988, Chaisson resigned from the plaintiff without revealing where he would be working. Luoni was told by another employee of the plaintiff that Chaisson was going to work for a new division of Scott Resources.

Although Langlois told Luoni that he did not contemplate leaving the plaintiff, Luoni observed Langlois' actions over the next few days. Luoni discovered some catalog designs with the name Summit Education written cross them on Langlois' desk and then re-read the business plan he had received from Langlois. He considered the events of the last few months to bear a close resemblance to the business plan and he took the plan and the catalog designs to Richardson.

The catalog designs had been done by Forgit and Wight, designers the plaintiff did not use. Summit Learning used Forgit and Wight as its designers for its 1988 catalog.

After receiving the business plan and designs from Luoni, Richardson began observing Langlois. He discovered notes and memos that did not relate to the business of the plaintiff and a call back slip from the president of the corporate defendants; he heard Langlois identify himself as working for Scott Resources during a telephone conversation. Richardson confronted Langlois, who admitted that he and Macek had assisted the corporate defendants with their catalogs. Richardson then terminated Langlois' employment with the plaintiff.

The plaintiff claims that the individual defendants conspired with the corporate defendants to improperly compete with the plaintiffs, with all six defendants committing torts as part of this conspiracy. Also, that the individual defendants committed various torts while employed by the plaintiff and secretly working for the corporate defendants, and that the six defendants committed acts of mail fraud and RICO violations.

The defendants, in response, submitted an affidavit by Paul D. Whittle, who is the President and Director of Scott Capital, Scott Resources, and Summit Learning. Whittle stated that Langlois first became employed by Summit Learning on September 1, 1988, and that before then Langlois had no contract of employment with the corporate defendants, had no agreement to receive compensation from the corporate defendants, and received no compensation from any of the corporate defendants. Similarly, Whittle stated that Macek first became employed by Scott Resources on June 1, 1988, and that before then Macek had no contract of employment with the corporate defendants, had no agreement to receive compensation from the corporate defendants, and received no compensation from any of the corporate defendants.

*Motion to Strike Affidavits*

■ As an initial matter, the defendants move to strike the affidavits of Luoni and Richardson, which were submitted by the plaintiff. First, the defendants contend that because the affidavits contain averments of statements by Langlois, who has died, the alleged declarations by Langlois must be excluded under New Hampshire Rev.Stat.Ann. ("RSA") 516:25. That section provides in pertinent part

> In actions ... by or against the representatives of deceased persons, ... any statement of the deceased, whether oral or written, shall not be excluded as hearsay provided that the trial judge shall first find as a fact that the statement was made by decedent, and that it was made in good faith and on decedent's personal knowledge.

RSA 516:25; *see also* N.H. R.Evid. 804(b)(5) (containing identical language). As an evidentiary provision, regarding the use of hearsay, *see, e.g., Piper v. Fickett,* 113 N.H. 631, 632, 312 A.2d 698 (1973), RSA 516:25 is inapplicable to this proceeding; instead, the Federal Rules of Evidence govern the exclusion or admission of the affidavits. *Forrestal v. Magendantz,* 848 F.2d 303, 305 (1st Cir.1988); *Ricciardi v. Children's Hosp. Medical Center,* 811 F.2d 18, 21 (1st Cir.1987).

■ The defendants contend that the alleged statements by Langlois must be excluded as hearsay pursuant to Fed.R.Evid. 802. The declarations in Luoni's affidavit, however, are not used for their truth in establishing the court's jurisdiction over the corporate defendants. Langlois' statements about remaining with the plaintiff in March, 1988 (para. 4), about errors in Luoni's profit analysis, in March, 1988 (para. 5), about why Macek resigned, in May, 1988 (para. 7), and about not leaving the plaintiff, in July, 1988 (para. 11) all are used to explain the conduct of Luoni and the truth of these statements are not relevant to the issue of personal jurisdiction over the corporate defendants.

■ The declarations in Richardson's affidavit also are not inadmissible. Langlois' alleged identification of himself as working for Scott Resources (para. 23) appears to be admissible as a statement by an agent of the corporate defendants concern-

ing a matter within the scope of the agency, Fed.R.Evid. 801(d)(2)(D), or possibly as a statement by a co-conspirator. Fed.R. Evid. 801(d)(2)(E). Langlois' alleged "confession" to Richardson (para. 24) could be admissible as a statement against Langlois' pecuniary interest. Fed.R.Evid. 804(b)(3). An "unequivocal conclusion that the evidence will be admissible at trial as a condition precedent to its consideration" is not necessary in order to consider the affidavit. *Reed v. Ford Motor Co.*, 679 F.Supp. 873, 874 (S.D.Ind.1988); *Corley v. Life & Casualty Ins. Co.*, 296 F.2d 449, 450 (D.C.Cir. 1961); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure ("Wright & Miller")* § 2738.

■ Despite the defendants' contentions, this court does not consider the purported statements of Langlois to be "completely untrustworthy" or otherwise inappropriate for use by the plaintiff to oppose the corporate defendants' motion. Moreover, even if RSA 516:25 were applicable, the court is satisfied, at this stage in the proceedings, that the statements were made by Langlois, were made in good faith, and were made on Langlois' personal knowledge, therefore making them admissible under New Hampshire law. Accordingly, the court will not strike the affidavits of Luoni and Richardson.

### Personal Jurisdiction

The corporate defendants have moved to dismiss for lack of personal jurisdiction, contending that the plaintiff has failed to allege sufficient facts to establish that they are subject to this action in New Hampshire.

■ When the court's personal jurisdiction over the defendants is challenged, "the plaintiff has the burden of proving that jurisdiction exists." *Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7, 8 (1st Cir.1986). However, the plaintiff must make only a prima facie showing that jurisdiction exists, based on specific facts alleged in the pleadings, affidavits, and exhibits in order to meet its burden. *Ealing Corp. v. Harrods, Ltd.*, 790 F.2d 978, 979 (1st Cir.1986); *Kowalski*,

787 F.2d at 8–9. The allegations of jurisdictional facts are to be construed in favor of the plaintiff. *Kowalski*, 787 F.2d at 9.

■ The court applies a two-part test to determine whether personal jurisdiction may be exercised over a non-resident defendant. First, the court must determine whether the applicable state long-arm statute authorizes jurisdiction. *Id.* at 10; *see also Phelps v. Kingston*, 130 N.H. 166, 170, 536 A.2d 740 (1987). If the long-arm statute would permit jurisdiction, the court must determine whether the defendant has established "minimum contacts" with the state sufficient to insure that the assertion of personal jurisdiction would not be inconsistent with due process and offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *see also Ganis Corp. v. Jackson*, 822 F.2d 194, 197 (1st Cir.1987); *Phelps*, 130 N.H. at 170, 536 A.2d 740.

■ The applicable long-arm statute for foreign corporations is RSA 293–A:121. *Phelps*, 130 N.H. at 171, 536 A.2d 740; *Kowalski*, 787 F.2d at 10. That section provides, in pertinent part

> If a foreign corporation ... commits a tort in whole or in part in New Hampshire, the acts shall be deemed to be doing business in New Hampshire by the foreign corporation and shall be deemed equivalent to the appointment by a foreign corporation of the secretary of state ... to be its ... attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of the ... tort.

RSA 293–A:121. The section is construed "to provide jurisdiction over foreign defendants to the full extent that the statutory language and due process will allow." *Phelps*, 130 N.H. at 171, 536 A.2d 740.

Here, construing the facts in favor of the plaintiff, the individual defendants committed various torts while employed by the

plaintiff in New Hampshire and secretly working for the corporate defendants. They misappropriated trade secrets of the plaintiff, converted various business lists and records, interfered with contractual relations between the plaintiff and various clients and business associates of the plaintiff, and interfered with advantageous relations between the plaintiff and various third parties. These torts also were committed in New Hampshire by the corporate defendants acting through the individual defendants.

The plaintiff further alleges that the corporate defendants interfered with contractual relations between the plaintiff and some of the plaintiff's employees. Considering that the plaintiff's employees were situated in New Hampshire, this tort also was committed in New Hampshire.

The plaintiff's allegations of civil conspiracy, mail fraud and RICO violations all involved conduct by the individual defendants, working with and for the corporate defendants, in New Hampshire. Therefore, the corporate defendants committed these violations at least in part in New Hampshire through the conduct of the individual defendants.

The plaintiff's allegations against the corporate defendants of interference with contractual and advantageous relations between the plaintiff and third parties could include actions not taken by the individual defendants so that the conduct did not occur in New Hampshire. Similarly, the allegations that the corporate defendants committed unfair trade acts or practices, in violation of RSA 358–A, do not involve conduct in New Hampshire. However, all of these allegations involve an injury to the plaintiff in New Hampshire, where the plaintiff is located. Where a defendant's alleged torts cause harm to a plaintiff's business relations, and the plaintiff's "principal place of business is in New Hampshire and harm is alleged to be located in New Hampshire, the Court finds that defendants' conduct results in a New Hampshire tort." *Lex Computer & Mgmt. Corp. v. Eslinger & Pelton, P.C.,* 676 F.Supp. 399, 403 (D.N.H.1987); *see also*

*Phelps,* 130 N.H. at 172–73, 536 A.2d 740 (requirements of long-arm statute met even if only the injury for which the plaintiff seeks recovery occurred in New Hampshire).

The defendants argue that the plaintiff has failed to allege sufficient facts to demonstrate that the corporate defendants committed a tort in New Hampshire. However, the plaintiff has provided sufficient detail to demonstrate that the individual defendants acted in New Hampshire on behalf of the corporate defendants and that the impact of the torts would be felt by the plaintiff in New Hampshire. Although the details of the defendants' conduct are missing, the plaintiff has not alleged conduct where more detail is needed to establish a New Hampshire connection. *Cf. Kowalski,* 787 F.2d at 9–11 (Massachusetts defendant allegedly committed malpractice in Massachusetts, when representing plaintiff in Massachusetts; no injury in New Hampshire where plaintiff suffered only the loss of a cause of action in Massachusetts). The plaintiff has provided sufficient detail to demonstrate that the defendants committed a tort "in whole or in part in New Hampshire," so as to subject the corporate defendants to the long-arm statute.

Having determined that the long-arm statute authorizes jurisdiction, the court must determine whether the due process requirements are met. A defendant will have established the necessary "minimum contacts" with the forum state if it "has 'purposefully directed' [its] activities at residents of the forum," *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182 (quoting *Keeton v. Hustler Magazine,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)), "and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182 (quoting *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)). The defendant's "conduct and connection with the forums state" must be such that the defendant "should reasonably anticipate being haled into court there." *World–*

*Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183.

█ Here, the corporate defendants used the individual defendants, in New Hampshire, as part of their conduct directed at the plaintiff. In this fashion, the corporate defendants purposefully directed their activities at a resident of New Hampshire, and thereby caused injuries which are the subject of this litigation. Even the out-of-state conduct by the corporate defendants had foreseeable effects in New Hampshire. The plaintiff has alleged intentional interference with the plaintiff's relations with third parties, which would be expected to cause injury to the plaintiff in New Hampshire. Under these circumstances, even without a physical presence here, the corporate defendants' conduct was such that they could reasonably anticipate being haled into court here. *See Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1486–88, 79 L.Ed.2d 804 (1984) (Florida residents, responsible for libelous article in national magazine, subject to suit in victim's home state of California); *Lex Computer*, 676 F.Supp. at 404–05 (out-of-state conduct causing foreseeable harm to New Hampshire business in New Hampshire subjects defendant to jurisdiction in New Hampshire); *see also Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.")

The corporate defendants have presented no reason why exercise of jurisdiction over them, in light of their "purposefully established minimum contacts with" New Hampshire, would offend traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. at 476–78, 105 S.Ct. at 2184–85. New Hampshire has an "interest in providing a forum for its residents to redress injuries suffered here," *Lex Computer*, 676 F.Supp. at 405, and the corporate defendants have not presented any

reason why "the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2185.

Accordingly, the court can assert jurisdiction over the corporate defendants.

*Venue*

The corporate defendants have moved to dismiss for lack of venue, contending that the venue requirements for a RICO claim, 18 U.S.C. § 1965(a), and the general venue requirements, under 28 U.S.C. § 1391, have not been met.

█ The plaintiff concedes that venue is not proper under the RICO venue provision, but contends that venue is nonetheless proper under the general venue provision. The RICO venue provision "is not intended to be exclusive, but is intended to liberalize the existing venue provisions. Therefore, where venue is improper under § 1965(a), it is appropriate to inquire whether the action can be maintained under the general venue statute, 28 U.S.C. § 1391(b)." *Van Schaick v. Church of Scientology*, 535 F.Supp. 1125, 1133 n. 6 (D.Mass.1982).

█ In actions where jurisdiction is not based solely on diversity of citizenship, venue is proper "in the judicial district ... in which the claim arose...." 28 U.S.C. § 1391(b). The plaintiff has the burden to establish that venue is proper in this district. *Lex Computer*, 676 F.Supp. at 406; 15 *Wright & Miller* § 3826. Venue must be proper for each claim. *Lex Computer*, 676 F.Supp. at 406; 15 *Wright & Miller* § 3808.

█ With all of the plaintiff's claims, the plaintiff's business allegedly was injured in New Hampshire. " 'If the injury occurred in New Hampshire, then the tort claims arose in New Hampshire, and venue is appropriate under section 1391(b).' " *Velcro Group Corp. v. Billarant*, 692 F.Supp. 1443, 1450 (D.N.H.1988) (quoting *Lex Computer*, 676 F.Supp. at 406); *see also Rosenfeld v. S.F.C. Corp.*, 702 F.2d 282, 284 (1st Cir.1983) (recognizing the "place of injury" test as one way to determine where the claim arose). In addition,

many of the acts underlying the plaintiff's claims occurred in New Hampshire, where the individual defendants allegedly obtained information and property from the plaintiff for the corporate defendants, where the corporate defendants allegedly raided the plaintiff's employees, and where acts in furtherance of the civil conspiracy, mail fraud, and RICO counts occurred. These actions demonstrate that the claims arose in New Hampshire for venue purposes.

### The Mail Fraud Claims

■■■ The corporate defendants and defendant Macek have moved to dismiss the plaintiff's mail fraud claims, contending that no private cause of action exists based on the federal mail fraud statute, 18 U.S.C. § 1341.

The mail fraud statute provides in pertinent part

> Whoever, having devised or intending to devise any scheme or artifice to defraud, ... for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1341. As several courts of appeal have recognized, "Congress did not intend to create a private cause of action for plaintiffs under the Mail Fraud Statute." *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1179 (6th Cir.1979); *Bell v. Health–Mor, Inc.*, 549 F.2d 342, 347 (5th Cir.1977); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 501, 105 S.Ct. 3275, 3292–93, 87 L.Ed.2d 346 (1985) (Marshall, J., dissenting) (observing that some Courts of Appeal had held that no implied cause of action existed under the mail fraud statute).

Although more recent cases have recognized that the predicate acts necessary for a civil RICO claim can be instances of mail fraud, *see, e.g., New England Data Services v. Becher*, 829 F.2d 286, 287–88 (1st Cir.1987), those cases do not suggest that a private cause of action has been recognized for mail fraud violations by themselves. RICO specifically provides for a private cause of action, *see* 18 U.S.C. § 1964(c), and its existence does not affect the availability of an implied private cause of action for mail fraud. The plaintiff may allege mail fraud as the predicate acts for its RICO claim, but the mail fraud allegations themselves do not state a separate cause of action.

### More Definite Statement

■■■ The corporate defendants have moved for a more definite statement of the complaint in seven areas, contending that they are unable to frame a responsible pleading.

The Federal Rules of Civil Procedure provide

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired.

Fed.R.Civ.P. 12(e). A more definite statement will be required only when the pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." 5 *Wright & Miller* § 1376. The "Federal Rules employ the concept of notice pleading, and, for this reason, motions for a more definite statement are not favored." *Choat v. Rome Indus.*, 480 F.Supp. 387, 391 (N.D.Ga.1979); *see also Cox v. Maine Maritime Academy*, 122 F.R.D. 115, 116 (D.Me.1988); *Bazal v. Belford Trucking Co.*, 442 F.Supp. 1089, 1101 (S.D.Fla.1977); *Feldman v. Pioneer Petroleum, Inc.*, 76 F.R.D. 83, 84 (W.D. Okla.1977). The "motion is granted sparingly since it is not to be used as a substi-

tute for discovery in trial preparation, but is to be used only when a pleading is too general." *Town of Hooksett School Dist. v. W.R. Grace & Co.*, 617 F.Supp. 126, 135 (D.N.H.1984) (citation omitted); *see also Feldman*, 76 F.R.D. at 84. "Whether to grant a motion for a more definite statement is a matter within the discretion of the trial court." 5 *Wright & Miller* § 1377 (Supp.1987); *United States v. Metro Dev. Corp.*, 61 F.R.D. 83, 85 (N.D.Ga.1973).

■ With the exception of the request for details regarding the alleged mail fraud, the corporate defendants' motion will be denied. First, the corporate defendants complain that no distinctions are drawn among them in the complaint. However, the complaint adequately apprises each defendant of the allegations against it, making a responsive pleading possible. Considering that the plaintiff essentially alleges that the corporate defendants acted together and has not had the benefit of discovery, the plaintiff's failure to distinguish defendants does not justify a more definite statement.

■ Second, the corporate defendants seek the identities of people who acted on behalf of the corporate defendants. However, as the plaintiff observes, the complaint specifies that the individual defendants were associated with the corporate defendants. Further names can await discovery, as their omission does not prevent a responsive pleading. In addition, the allegations regarding the conduct of the individual defendants meet the third request of the corporate defendants, that the circumstances of any conduct involving the corporate defendants be specified.

■ The fourth and fifth areas in which the corporate defendants seek a more definite statement involve details of the alleged misappropriations and conversions. However, the complaint alleges conduct by the individual defendants and outlines the type of materials and information misappropriated. The allegations are sufficient to permit a response, especially since the corporate defendants should know whether they did what is charged. *See Feldman*, 76 F.R.D. at 84. The details can be deter-mined in discovery. Similarly, the absence of details regarding the plaintiff's allegations of interference with contractual and advantageous relations, the sixth area in which more detail is sought, do not leave the defendants unable to respond.

■ Finally, the corporate defendants seek the specifics of the alleged mail fraud, including what was mailed, and who uttered what false or fraudulent statements or representations. Although the defendants may be able to respond to the allegations, more specificity is required in RICO mail fraud cases. *New England Data Services*, 829 F.2d at 290. The plaintiff must describe the time, place, and content of the alleged mail fraud. *Id.* at 292; *Wayne Inv. v. Gulf Oil Corp.*, 739 F.2d 11, 13 (1st Cir.1984).

Here, as in *New England Data Services*, there are multiple defendants and the plaintiff was not directly involved in the alleged mail fraud. The plaintiff has "provided an outline of the general scheme to defraud and established an inference that the mail ... was used to transact this scheme." *New England Data Services*, 829 F.2d at 291. Therefore, discovery is appropriate to permit the plaintiff to obtain the information necessary to plead the time, place, and contents of the alleged communications between the defendants. *Id.*

*Rule 11 Sanctions*

■ Defendant Macek, in joining with the corporate defendants' motion to dismiss the mail fraud claims, has moved for sanctions, contending that a claim for mail fraud was not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Fed.R.Civ.P. 11. Considering the close relationship between the claims for mail fraud and the plaintiff's RICO claim that uses the mail fraud as the predicate acts, the court does not consider sanctions appropriate.

*Conclusion*

The motions by the corporate defendants and defendant Macek (docs. # 8 and 9) are granted in part and denied in part as fol-

**52**

lows. The corporate defendants' motions to dismiss for lack of personal jurisdiction and improper venue are denied. The motions by the corporate defendants and defendant Macek to dismiss the plaintiff's claims of mail fraud (Counts V(K), VII(G), VIII(G), and IX(G)) are granted. The corporate defendants' motion for a more definite statement is granted with respect to the allegations of mail fraud (which are still necessary for the plaintiff's RICO claims) and denied in all other respects; the plaintiff shall have sixty days from the date of this Order to conduct discovery and amend its complaint so as to state the circumstances of the alleged fraud with particularity. Defendant Macek's motion for sanctions is denied. The defendants' motion to strike affidavits (doc. # 18) is denied.