**Mitchell SWARTZ, Plaintiff,**

v.

**SCHERING–PLOUGH CORPORATION, Plough U.S.A., Schering Plough Healthcare Products, Defendant.**

**No. Civ.A. 99–10177–WGY.**

United States District Court,
D. Massachusetts.

June 17, 1999.

Massachusetts is an "extraditable offense." *See id.* at art. 2.

Mitchell Swartz, Wellesley, MA, plaintiff pro se.

Arnold P. Messing, Choate, Hall & Stewart, Boston, MA, for Berlex Laboratories, defendant.

Alan F. Feeney, Fitzhugh & Associates, Boston, MA, for Schering–Plough Corp.,

Schering–Plough Healthcare Products, Inc., defendants.

### MEMORANDUM AND ORDER

YOUNG, Chief Judge.

## I. INTRODUCTION

The *pro se* plaintiff in this action, Mitchell Swartz ("Swartz"), brings a multi-count intellectual property action against the Schering–Plough Corporation ("Schering"), Plough U.S.A. ("Plough"), and Schering–Plough Healthcare Products ("Schering Healthcare") (collectively, the "Schering Defendants"). The gravamen of Swartz' complaint is that the Schering Defendants expropriated Swartz' idea for a "dual-protection" product to screen children and adults from harmful ultraviolet sunlight as well as insects. As a result, Swartz sues for (i) business and intellectual property misappropriation, (ii) trademark infringement, (iii) unfair competition, (iv) breach of contract, (v) negligence and substandard conduct, (vi) fraudulent misrepresentation, (vii) fraudulent conveyance, transfer, or sale, (viii) computer and mail fraud, (ix) civil rights violations, and (x) RICO violations.[1] In response, the Schering Defendants have filed the instant motion to dismiss for failure to state claims pursuant to Fed.R.Civ.P. 12(b)(6).[2]

## II. MOTION TO DISMISS STANDARD UNDER FED.R.CIV.P. 12(b)(6).

In reviewing the Schering Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of

1. Swartz originally filed his complaint as a single document. After the Schering Defendants filed their motion to dismiss, Swartz filed two separate amended complaints—one against the Schering Defendants and another against several other defendants originally included in the complaint (the "Berlex Defendants"). Although Swartz had the right to amend his complaint without leave, *see* Fed.R.Civ.Pro. 15(a), the Court informed him that he could not file two amended complaints. Thus, Swartz voluntarily chose to dismiss his

action against the Berlex Defendants and proceed in this Court only against the Schering Defendants.

2. The Schering Defendants also move to strike the complaint pursuant to Fed.R.Civ.P. 12(f) and for a more definite statement pursuant to Fed.R.Civ.P. 12(e). These motions no longer have significant merit in light of Swartz' filing of the amended complaint and will not be addressed.

the plaintiffs." *Monahan v. Dorchester Counseling Ctr.*, 961 F.2d 987, 988 (1st Cir.1992). The Court may grant dismissal only if "it appears beyond doubt that [Swartz] can prove no set of facts in support of his claim which would entitle him to relief." *Roeder v. Alpha Indus.*, 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 [1957]). Despite this low threshold, the pleading requirement is "not entirely a toothless tiger." *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). In order to survive the motion to dismiss, Swartz must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Id.* at 15. The Court need not accept Swartz' "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir.1996)

## III. FACTS DERIVED FROM THE COMPLAINT.

In 1975, Swartz invented and developed a marketing plan for a product called "SUN–BUG." *See* Am.Compl. ¶¶ 4–5. The general idea behind SUN–BUG was to combine the advantages of sun-screen and insect-repellant into a single topical product. *See id.* "After the idea, business, product and trademark were developed, and said trademark was used over a wide area," the Schering Defendants [3] solicited information about SUN–BUG from three of Swartz' friends involved in the development of the product: (i) Dr. Robert Berlin ("Dr.Berlin"), (ii) Ms. Katharine Berlin ("Ms.Berlin"), and (iii) Ms. Elizabeth Solomon ("Solomon"). *See id.* at ¶ 6. Between 1975 and 1976, these three individuals had repeated discussions about SUN–BUG with high-level employees at Schering including President Abraham Plough,[4] Board Member Harry Somson ("Somson"), and the Director of Product Development. *See id.* Moreover, Dr. Berlin "confidentially shared the entire concept" behind SUN–BUG with the Schering Defendants. *See id.*

In December, 1975, the parties reached a confidential agreement regarding SUN–BUG. *See id.* at 7. The Agreement was implicit in "the *a priori* extreme good will, and because of a successful friendship among the families of Dr. Berlin and … Mr. Abraham Plough and Mr. Somson…." [5] *Id.* As there was a history of successful verbal contracts between the parties, the agreement was essentially made on a handshake. *See id.* Abraham Plough and Somson personally insisted that no additional secrecy agreements were needed. *See id.* Based on this implicit confidential agreement, Swartz transferred all available information about SUN–BUG to the Schering Defendants in 1975. *See id.* at ¶ 8.

Thereafter, Swartz attempted to enter into an exclusive license with the Schering Defendants for the SUN–BUG technology and product development. *See id.* at ¶ 9. The parties, however, never reached a licensing agreement regarding SUN–BUG. *See id.* at ¶ 10. In 1997, the Schering Defendants began marketing a product called "BUG & SUN" which Swartz claims is merely his SUN–BUG product and concept being sold under a different name. *See id.* at ¶ 11. Although Swartz expressed his concern to the Schering Defendants that they were infringing SUN–BUG and offered a license, the parties did not reach any licensing agreement. *See id.* at ¶ 17. The Schering Defendants then "reportedly licensed or sold or transferred [the SUN–BUG] technology to a second agency, group, individual, or company." *Id.* Swartz "recently" filed a trademark for

---

3. Schering, Plough, and Schering Healthcare are related corporate entities.

4. Abraham Plough is now deceased. *See* Def. Mem. at 11.

5. Somson was a close family friend of Dr. Berlin, executor of Ms. Berlin's estate, and involved in the Berlin family's financial matters. *See* Am.Compl. at ¶¶ 6–7.

SUN–BUG with the United States Patent and Trademark Office. *See id.* at ¶ 22.

## IV. BUSINESS AND INTELLECTUAL PROPERTY MISAPPROPRIATION.

■ In Count I of the Amended Complaint, Swartz brings a claim against the Schering Defendants for Business and Intellectual Property Misappropriation ("Trade Secret Misappropriation"). "The essence of an action for the wrongful use of trade secrets is the breach of the duty not to disclose or to use without permission confidential information acquired from another." *Jet Spray Cooler, Inc. v. Crampton,* 377 Mass. 159, 165, 385 N.E.2d 1349 (1979). In order to establish a claim for trade secret misappropriation, Swartz must sufficiently allege that (i) SUN–BUG is a trade secret, (ii) he took reasonable steps to preserve SUN–BUG's confidentiality, and (iii) the Schering Defendants utilized improper means, or participated in their own or another's breach of a confidential relationship, to acquire and use the trade secret. *See Picker Int'l. Corp. v. Imaging Equip. Servs., Inc.,* 931 F.Supp. 18, 35 (D.Mass.1995) (Wolf, J.).

■ Under Massachusetts law, a trade secret is defined as:

[A]ny formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers. A trade secret is a process or device for continuous use in the operation of the business. Generally it relates to the production of goods, as, for example, a machine or formula for the production of an article. The subject matter of a trade secret must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret.

*J.T. Healy & Son v. James A. Murphy & Son,* 357 Mass. 728, 736, 260 N.E.2d 723 (1970) (quoting Restatement of Torts § 757, comment b). The Schering Defendants first contend that, even as alleged, the subject matter of SUN–BUG was not "secret" because Swartz shared information "with at least five unidentified parties—none of whom were employees or agents of Schering–Plough." Def.Mem. at 5. This argument fails, however, because in his amended complaint, Swartz identifies the parties with whom he shared information as Dr. Berlin, Ms. Berlin, Solomon, Abraham Plough, and Somson—all of whom either "worked on the confidential business project" with Swartz or were subject to the purported confidential agreement. *See* Am.Compl. ¶ 6.

■ The Schering Defendants also point out that the Amended Complaint states that the SUN–BUG trademark "was used over a wide area" before any discussions between the parties began. *Id.* Since the purportedly misappropriated trade secret is essentially the SUN–BUG trademark or trade dress, as opposed to the SUN–BUG formula, previous dissemination of the product negates the existence of a trade secret. Even though Swartz adequately alleges that he took reasonable steps to preserve SUN–BUG's confidentiality in the negotiations with the Schering Defendants,[6] these precautions could

---

6. For example, Swartz pleads that information was "confidentially shared" with the Schering Defendants. Am.Compl. at 6. Likewise, the Amended Complaint states that Swartz allowed "information transfer to proceed" only after a "confidential agreement" was formed between the parties. *Id.* ¶ at 8. Also, from the allegation that "Mr. Plough and Mr. Somson personally insisted that no additional secrecy agreements were needed," *id.* at ¶ 7, the Court can draw the reasonable inference that Swartz and his colleagues suggested some form of secrecy agreement. Finally, Swartz also states that trade secrets and plans on SUN–BUG were placed in a folder marked "confidential" which was shared "with employees and agents of Schering–Plough after assurances, after agreement, af-

not restore SUN–BUG's "secret" status. Consequently, with respect to Count I of the Amended Complaint, this Court GRANTS the Schering Defendants' motion to dismiss.[7]

## V. TRADEMARK INFRINGEMENT.

■ In Count II of his Amended Complaint, Swartz alleges trademark infringement under the Lanham Act, 15 U.S.C. §§ 1051–1128. The Lanham Act

seeks to prevent one seller from using the same "mark" as—or one similar to—that used by another in such a way that he confuses the public about who really produced the goods (or service). Confusion may prevent the buyer from obtaining the goods he really wants. It may also jeopardize the commercial reputation of the senior (first) user, which might be tarnished by association with the junior (subsequent) user.

*DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1st Cir.1992). To establish his trademark claim, Swartz must allege that (i) he uses, and thereby "owns," a mark, (ii) that the Schering Defendants are using that same or a similar mark, and (iii) that the Schering Defendants' use is likely to confuse the public, thereby harming Swartz. *See Star Fin. Servs., Inc. v. AAS-TAR Mortgage Corp.*, 89 F.3d 5, 9 (1st Cir.1996). The Schering Defendants contend that Swartz' complaint does not meet either the use or likelihood of confusion requirements and his claim for trademark infringement must be dismissed.

■ Swartz' Amended Complaint does not rectify the deficient pleadings in his original complaint with respect to adequately pleading "use." All of Swartz' al-

legations surround past or future use of his SUN–BUG mark. For example, Swartz alleges that the "trademark SUN–BUG was used in 1975" and "[p]laintiff does now, and has in the past, been working toward, and has sold, a product that uses the 'marks' at issue." Am.Compl. ¶ 22. Similarly, the Amended Complaint states that "[p]laintiff did sell product labeled with the [SUN–BUG] trademark in 1975, even before Plaintiff shared the entire idea, plan, scheme, name, future market, and technology with the Defendants." *Id.; accord · id.* at ¶ 25 ("Plaintiff had a product on the market and plans to continue.").

Swartz' failure to allege any *current* use of the SUN–BUG mark is fatal to his trademark claim. As stated by the Supreme Court:

[t]here is no such thing as property in a trademark except as a right *appurtenant* to an *established* business or trade in connection with which the mark is employed. [ ][T]he right to a particular mark grows out of its use, not its mere adoption, its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property except in connection with an *existing* business.

*United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141 (1918) (emphasis added). Without a relationship to an existing product, Swartz has no protected trademark in SUN–BUG; he cannot "make a negative and merely prohibitive use of it as a monopoly." *Id.*, at 98, 39 S.Ct. 48. Even if Swartz once

ter transfer of confidential material." *Id.* at ¶ 8.

7. As an alternative basis for dismissal of Count I, this Court dismisses the trade secret claim because of abandonment. As mentioned above, a trade secret "is a process or device for *continuous use* in the operation of a business." *J.T. Healy*, 357 Mass. at 736, 260 N.E.2d 723 (emphasis added). Although the Amended Complaint sufficiently alleges that

Swartz used SUN–BUG in business in 1975, there is little if any showing that any trade secrets surrounding SUN–BUG were used at any time thereafter by Swartz. While there is no precedent directly on point, the "continuous use" requirement imposed by the *J.T. Healy* court implies that trade secret misappropriation incorporates an "abandonment" exception that applies here.

held a trademark for SUN–BUG, it has been lost through abandonment. *See Kusek v. Family Circle, Inc.*, 894 F.Supp. 522, 533 (D.Mass.1995) (Ponsor, J.) (noting that "proponent of the trademark must demonstrate that use of the mark has been deliberate and continuous, not sporadic, casual or transitory," and "nominal or residual use is not sufficient to avoid abandonment.") (citation and internal quotation marks omitted). Finally, the fact that Swartz recently filed for a trademark does not establish use. *See Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 815–16 (1st Cir.1987). Accordingly, this Court GRANTS the Schering Defendants' motion to dismiss with respect to Count II.

## VI. UNFAIR COMPETITION.

 In Count IV[8] of his Amended Complaint, Swartz brings a claim for unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). In order to support a claim of unfair competition under Section 1125, Swartz must plead a likelihood of confusion between SUN–BUG and BUG & SUN. *See Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1209 (1st Cir. 1983). In their motion to dismiss, the Schering Defendants contest any likelihood of confusion. As with the claim for trademark infringement, this Court cannot reach a likelihood of confusion analysis because there is nothing to confuse. Without an allegation of present competition, there can be no claim for unfair competition. *See Hughes v. Design Look Inc.*, 693 F.Supp. 1500, 1508 (S.D.N.Y.1988) (holding that plaintiff's production of calendars featuring reproductions of Andy Warhol's works was not unfair competition because Warhol estate was not currently producing a similar calendar). Thus, with respect to Count IV, this Court GRANTS the Schering Defendant's motion to dismiss.

8. In amending his complaint and omitting certain claims against the Schering Defendants, Swartz neglected to change the numbering of his claims. Consequently, there is

## VII. BREACH OF CONTRACT.

In Count V of his Amended Complaint, Swartz brings a claim against the Schering Defendants for breach of contract. Essentially, Swartz asserts that the Schering Defendants did not adhere to the purported confidentiality agreement. The Schering Defendants move to dismiss the claim because (i) the essential terms of any purported confidentiality agreement are not adequately alleged, (ii) Swartz did not personally participate in any of the alleged negotiations, contract formation, or delivery of information, (iii) Swartz cannot rely on any contractually related statements purportedly made by Abraham Plough because of the Massachusetts Dead Man's Statute, (iv) the complaint fails to plead sufficient dates to put the Schering Defendants on notice of any possible statute of limitations defense, and (v) the Amended Complaint states that the parties "never reached a[sic] agreement." This Court rejects each of these contentions.

 Under Massachusetts law, "[a]ll the essential terms of a contract must be definite and certain so that the intention of the parties may be discovered, the nature and extent of their obligations ascertained, and their rights determined." *Cygan v. Megathlin*, 326 Mass. 732, 733–734, 96 N.E.2d 702 (1951). A contract is not to be held unenforceable, however, "if, when applied to the transaction and construed in the light of the attending circumstances, the meaning can be ascertained with reasonable certainty." *Simons v. American Dry Ginger Ale Co.*, 335 Mass. 521, 523, 140 N.E.2d 649 (1957) (citation and internal quotation marks omitted). A favorable reading of the Amended Complaint allows this Court to ascertain the essential terms of the confidentiality agreement with reasonable certainty. For instance, the agreement was entered into "on or about

no Count III or Count X in the Amended Complaint. To avoid confusion, however, this Court uses the numbering system adopted by the Amended Complaint.

December of 1975" by Dr. Berlin, Ms. Berlin, Solomon, Abraham Plough and Somson and was to "continue forward from that time." Am.Compl. at ¶ 7. The pleadings also give rise to reasonable inferences that Swartz turned over SUN–BUG information on the conditions that (i) the information would be kept confidential, and (ii) the Schering Defendants would proceed with good faith licensing negotiations at any time they chose to produce a dual-action sunscreen product. *See id.* at ¶¶ 8–10. While more details would certainly be helpful, those provided are sufficient to survive a motion to dismiss.

■ The Schering Defendants' argument that the Amended Complaint does not state a claim for breach of contract because it fails to allege personal involvement by Swartz is also unavailing. This Court can reasonably infer that Swartz had a partnership with the individuals who dealt directly with the Schering Defendants concerning the confidentiality of the SUN–BUG information. See *id.* at ¶ 6 ("Plaintiff worked on the confidential business project with Dr. Robert Y. Berlin, Ms. Katharine Berlin, and Ms. Solomon."); *see also Wilder v. Manley*, No. CA924409H, 1994 WL 902879, at *3 (Mass.Super. Oct. 7, 1994) (Lauriat, J.) ("As between the parties, the question of partnership or joint venture is one of intention that must be proved by an expressed agreement, either written or oral, *or be inferred from* the acts or conduct of the parties.") (citation and internal quotation marks omitted) (emphasis added). As such, any agreement was effective as between Swartz and the Schering Defendants because "[e]very partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership...." Mass.Gen.L. ch. 108A, § 9(1) (1998).

■ The Schering Defendants' third basis for dismissing the breach of contract claim, i.e., that Swartz cannot rely on any contractually related statements purportedly made by Abraham Plough because of the Massachusetts Dead Man's Statute, also fails. Under Mass.Gen.L. ch. 233, § 65:

> In any action or other civil judicial proceeding, a declaration of a deceased person shall not be inadmissible in evidence as hearsay or as private conversation between husband and wife, as the case may be, if the court finds that it was made in good faith and upon the personal knowledge of the declarant.

The Schering Defendants argue that Swartz fails to allege that he ever spoke directly to Abraham Plough and thus "cannot claim to have 'personal knowledge' of any alleged declaration Mr. Plough possibly could have made, as is required by ... the statute." Def.Mem. at 11. Apparently, counsel for the Schering Defendants have misread the statute. Section 65 is an exception to the hearsay rule that, in this case, would require the Court to determine whether any statements made by Abraham Plough were based upon *his* personal knowledge. *See Mitchell v. Hastings & Koch Enters., Inc.*, 38 Mass.App.Ct. 271, 274–75, 647 N.E.2d 78 (1995). To the extent that it matters that Swartz did not himself hear Abraham Plough make any promises of confidentiality, Swartz alleges (and provides supporting affidavits to the effect) that his business partners had personal knowledge of declarations by Abraham Plough. *See* Am.Compl. at ¶¶ 6–8. Thus, since such testimony will be admissible at trial through the testimony of other witnesses, it is acceptable for Swartz to recount and rely upon statements made by Abraham Plough in the Amended Complaint.

■ With respect to the original complaint, the Schering Defendants contend that Swartz failed to plead sufficient dates surrounding the purported confidentiality agreement to put them on notice of any

possible statute of limitations defense. In the amended complaint, however, Swartz alleges that the agreement was entered into "on or about December of 1975." *Id.* at ¶ 7. Moreover, Swartz now alleges that BUG & SUN was introduced sometime in 1997. *See id.* at 16; Pl.Ex. A10, at 3. In addition to putting the Schering Defendants on notice of critical dates for the purposes of a statute of limitations defense, the Amended Complaint reveals that no such defense is applicable since this contract claim accrues on the date of the alleged breach. *See* Mass.Gen.L. ch. 260, § 2 (six year statute of limitations for breach of contract actions).

Finally, the Schering Defendants argue that the Amended Complaint expressly states that no agreement was ever reached between the parties. Once again, the Schering Defendants are mistaken. While it is true that the Amended Complaint states that "Plaintiff and Defendant never reached a[sic] agreement regarding the said confidentially-transmitted and shared idea, business, plan, formula, design technology and trademark known as SUN–BUG," this allegation refers to the failure to come to terms on a *licensing* agreement—not a confidentiality agreement. As described above, the terms of the confidentiality agreement are discernible. Thus, since none of the grounds for dismissing the breach of contract claim are persuasive, this Court DENIES the motion to dismiss with respect to Count V.

## IX. NEGLIGENCE AND SUBSTANDARD CONDUCT.

In Count VI of his Complaint, Swartz asserts a claim for negligence. Swartz claims that based on the purported confidentiality agreement, the Schering Defendants had a "fiduciary" responsibility, breached that responsibility by "ignor[ing]" Swartz, and thereby inflicted injury. Am.Compl. at ¶ 29.

The Schering Defendants base their entire challenge to this claim on the presumption that this Court would refuse to find that a contractual relationship was properly alleged. Although the preceding section demonstrates that the Amended Complaint successfully alleges a contractual relationship, the Court nonetheless dismisses Swartz' negligence claim because of the economic loss rule "which precludes recovery in negligence for purely economic loss. . . ." *Clark v. Rowe,* 428 Mass. 339, 342, 701 N.E.2d 624 (1998). Economic loss has been defined to include "consequent loss of profits without any claim of personal injury or damage to other property." *Marcil v. John Deere Ind. Equip. Co.,* 9 Mass.App.Ct. 625, 630 n. 3, 403 N.E.2d 430 (1980) (citation and internal quotation marks omitted). Here, Swartz has claimed loss of profits or business opportunities—there is no indication of any physical injury to person or property. *See id.* at 630, 403 N.E.2d 430 (holding that plaintiff could not maintain a claim for negligent design or manufacture when it claimed as damages only severe losses in his business and good will). As such, with respect to Count VI, this Court GRANTS the Schering Defendants' motion to dismiss.

## X. FRAUD CLAIMS.

In the Amended Complaint, Swartz sues the Schering Defendants for fraudulent misrepresentation[9] (Count VII) fraudulent conveyance, transfer, or sale (Count VIII), and computer and mail fraud (Count IX). The Schering Defendants contend that these three counts fail the heightened pleading requirements of Fed. R.Civ.P. 9(b). For claims sounding in fraud, Rule 9(b) requires that the "particular times, dates, places or other details of [the] alleged fraudulent involvement of the actors be alleged." *Serabian v. Amoskeag Bank Shares, Inc.,* 24 F.3d 357, 361 (1st Cir.1994) (citation and internal quotation marks omitted). Unfortunately for

---

9. Swartz actually sues for "Fraudulent Intent." *See* Am.Compl. at 15. The action is more properly labeled as one for either "Fraudulent Misrepresentation" or "Deceit."

Swartz, none of his three fraud claims, even as amended, satisfies Rule 9(b).

■ With respect to Swartz' claim for fraudulent misrepresentation, the only details provided are that the Schering Defendants (i) "falsely stated they invented SUN–BUG on or about the years 1994 to the present throughout the United States and world-wide," and (ii) "communicated to the public, on the Internet and to the FDA that the Defendants had invented, developed, and created SUN–BUG." Am. Compl. ¶ 30. Although Swartz adequately pleads the substance of the misrepresentations, the allegations fail to specify precisely *when* the purported misrepresentations occurred. Stating that they occurred from "1994 to the present" is too general. *See Mead Corp. v. Stevens Cabinets, Inc.*, 938 F.Supp. 87, 90 (D.Mass.1996) (Ponsor, J.) (holding that allegations that defendant made fraudulent misrepresentations "beginning in 1987, if not sooner," failed to satisfy requirements of Fed.R.Civ.P. 9[b] ). Moreover, the Amended Complaint does not state *which corporate defendant* in particular made such statements and *where* (other than generally "on the Internet") they were made or published. This Court thus GRANTS the Schering Defendants' motion to dismiss Swartz' claim for fraudulent misrepresentation.[10]

■ The Amended Complaint provides even fewer details with respect to Swartz' claim for fraudulent conveyance. Although Swartz fairly alleges that the Schering Defendants fraudulently transferred the SUN–BUG idea, the allegations completely fail to reveal to whom such transfer was made or when and where it occurred. The Amended Complaint merely states that "an additional party, entity, agency, company or individual did receive plaintiff's trademark, business plan, intellectual property and ideas...." Am. Compl. at ¶ 33. Such allegations are seriously inadequate under Rule 9(b). This Court thus GRANTS the Schering Defendants' motion to dismiss Count VIII of the Amended Complaint.

■ Finally, despite Swartz' contention, there is not a private right of action for mail or computer fraud under either Massachusetts or federal law. In an attempt to create such an action from whole cloth, Swartz relies on Mass.Gen.L. ch. 266, § 30 which prohibits *larceny* of electronically processed data and data in transit, among other types of property. While federal law criminalizes mail fraud, *see* 18 U.S.C. § 1341, it does not give rise to a private right of action. *See, e.g., Delta Educ., Inc. v. Langlois,* 719 F.Supp. 42, 50 (D.N.H.1989). While mail fraud can be the predicate of a civil RICO action, "the mail fraud allegations themselves do not state a separate cause of action." *Id.* Even if claims for mail and computer fraud existed, Swartz' count for computer and mail fraud contains no specifics whatsoever and would fail the requirements of Fed.

---

10. Swartz does provide two exhibits with the Amended Complaint that come close to satisfying Fed.R.Civ.P. 9(b)—especially given Swartz' *pro se* status: (i) the Schering–Plough 1997 Annual Report which states that Schering Plough introduced "two innovative new products [including] Coppertone Bug & Sun ..." Ex. A9 at 13, and (ii) pages from Coppertone's website which shows a timeline and the words "BUG & SUN SUNSCREEN WITH INSECT REPELLANT INTRODUCED" as occurring in 1997, Ex. A10. Even if this Court were to find that these exhibits satisfy the rigorous requirements of Rule 9(b), however, the Court would dismiss the claim on the alternative ground that Swartz has no standing to bring a claim for fraudulent misrepre-

sentation because he fails adequately to establish in his complaint that *he* relied on any purported fraudulent statements. *See Danca v. Taunton Sav. Bank,* 385 Mass. 1, 8, 429 N.E.2d 1129 (1982) (holding that plaintiff in deceit action must prove that "the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the *plaintiff relied upon the representation* as true and acted upon it to his damage") (citation and internal quotation marks omitted) (emphasis added). Swartz states only that the "Internet, the FDA, and the public relied upon [the Schering Defendants'] statements." Am.Compl. ¶ 30.

R.Civ.P. 9(b). *Cf. New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 291 (1st Cir.1987) (holding that pleader in RICO action based upon mail and computer fraud is required "go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud.").[11]

## XI. CIVIL RIGHTS VIOLATIONS.

In Count XI of the Amended Complaint, it appears that Swartz asserts an action for violations of his civil rights by the Schering Defendants under either *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), or 42 U.S.C. § 1983. In either a *Bivens* or Section 1983 action, Swartz must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of law. *See West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Bivens*, 403 U.S. at 389, 91 S.Ct. 1999. Although there are some strained

allegations that Swartz' equal protection and due process rights were violated,[12] there is no cogent allegation that the Schering Defendants acted under color of state law.[13] This Court therefore GRANTS the Schering Defendants' motion to dismiss with respect to Count XI of the Amended Complaint.

## XII. RICO VIOLATIONS.

In Count XII, Swartz states that "[t]here may be violations under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1691 et. seq." Am.Compl. ¶ 36. Section 1964(c) establishes a private cause of action under RICO.[14] To state a federal civil RICO claim, Swartz must allege that the defendant engaged in one of the delineated "prohibited activities" through "a pattern of racketeering activity." 18 U.S.C. § 1962(a). "Racketeering activity" means "any act or threat" involving specified state law crimes or "any act which is indictable" under specified federal statutes. *Id.* at § 1961(1). A "pattern of racketeering activity" means at least two acts of

---

**11.** Again, as with the claim for fraudulent misrepresentation, this Court could find the two attached exhibits sufficient to satisfy Fed. R.Civ.P. 9(b) with respect to the claim for mail and computer fraud (if such claim existed). Even so, Swartz would lack standing to sue for computer or mail fraud because there is no showing that he relied on such statements in any way. *Cf. General Elec. Co. v. Lyon*, 894 F.Supp. 544, 554 (D.Mass.1995) (Ponsor, J.) ("To sustain a claim [for mail fraud under RICO], the injured party must show that it relied upon the representation as true and acted on the basis of the misrepresentation to its detriment."); *But cf. Sebago, Inc. v. Beazer East, Inc.*, 18 F.Supp.2d 70, 81–83 (D.Mass.1998) (Wolf, J.) (holding that civil RICO action premised on federal mail fraud statute requires no showing of detrimental reliance).

**12.** "By transferring the technology to the 'fifth party' after Plaintiff reminded the Defendants of the Agreement and offered them a license, Defendants have violated Plaintiff's civil rights, including but not limited to the 14th Amendment's 'equal protection clause.' Plaintiff had a right to an opportunity to be

heard before losing any liberty or property rights under color of law which occurred when Federal papers such as for the FDA or interstate commerce, including specifically those which were filed by Defendants claiming they invented SUN–BUG with its slick name change." Am.Compl. ¶ 35.

**13.** It appears that Swartz incorrectly believes that a party who files papers with the government acts under color of law. *See Schatte v. International Alliance of Theatrical Stage Employees and Moving Picture Mach. Operators of United States and Canada*, 182 F.2d 158, 167 (9th Cir.1950) ("Making representations to a state official, even in a report required by law, is not acting 'under color of law' because it does not purport to be done on behalf of the state.").

**14.** Section 1964(c) states, in pertinent part, that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the costs of the suit, including reasonable attorney's fee . . . ."

racketeering activity or predicate acts within a ten year period. *Id.* § 1961(5). While two predicate acts are necessary, they may be insufficient to support a civil RICO claim if they do not establish a pattern. *See Sedima v. Imrex Co., Inc.,* 473 U.S. 479, 497 n. 14, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). To prove a pattern of racketeering activity, the predicate acts must be related and constitute or pose a threat of continued criminal activity. *See H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Apparel Art Int'l, Inc. v. Jacobson,* 967 F.2d 720, 722 (1st Cir.1992). Finally, the plaintiff must suffer an injury to his business or property because of the predicate acts. *See Sedima,* 473 U.S. at 496, 105 S.Ct. 3275. Where the predicate acts supporting a RICO claim sound in fraud, the plaintiff must assert all elements of his or her RICO claim according to the heightened pleading requirements of Fed.R.Civ.P. 9(b). *See Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 42 (1st Cir.1991).

 Swartz' RICO claim against the Schering Defendants must be dismissed because he cannot properly rely upon either of the two predicate acts of racketeering activity that he asserts. First, Swartz attempts to rely upon the alleged mail and computer fraud perpetrated by the Schering Defendants. As described above, *see supra* Section X, such allegations of fraud fail and thus Swartz cannot rely on them. Second, as the other predicate act, Swartz attaches two exhibits that he claims demonstrate that the "Federal Trade Commission successfully prosecuted Defendant Schering–Plough Healthcare Products ... for violations of the provisions of the Federal Trade Commission Act," and that such violations pertained to "false and misleading" advertising of a similar nature to the purportedly inaccurate claims about the origins of BUG & SUN. Am.Compl. ¶ 31.

---

**15.** As stated in the press release describing the consent agreement, "[a] consent agreement is for settlement purposes only and does

A review of the exhibits, however, reveals only that a complaint was brought against Schering Healthcare by the Federal Trade Commission, *see* Pl.Ex. A11, and such charges were settled by consent agreement,[15] *see* Pl.Ex. A12. Without any predicate acts of racketeering, Swartz cannot make out a claim for civil RICO. Thus, with respect to Count XII, this Court GRANTS the Schering Defendants' motion to dismiss.

## XIII. CONCLUSION.

For the aforementioned reasons, this Court GRANTS the Schering Defendants' motion to dismiss as to Counts I, II, IV, VI, VII, VIII, IX, XI and XII of the Amended Complaint. The Court DENIES the Schering Defendants' motion to dismiss with respect to Count V of the Amended Complaint. (Docket # 33).

---

not constitute an admission of a law violation." Ex. A12 at 3.